UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:13-CR-13-GFVT-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| BILLIE JO COMBS, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

The Court, on referral, *see* DE #16, again considers reported violations of supervised release conditions by Defendant, Billie Jo Combs. The record reflects that the Western District of New York convicted Defendant for possession of a List I chemical, to wit, pseudoephedrine, knowing and having reasonable cause to believe that the listed chemical would be used to unlawfully manufacture methamphetamine, a Schedule II controlled substance, in violation of 21 § 841(c)(2). District Judge Arcara sentenced Combs to 65 months of imprisonment followed by 3 years of supervised release. Combs began her supervised release term on May 3, 2013. This District accepted supervision by transfer. DE #1.

Combs has been through the revocation process previously. The District Court found violations and revoked Defendant on June 27, 2014, DE #12 (Order), imposing a 30-day incarceration term, followed by a 60-day home detention period, followed by commencement of the balance of her previously imposed term of supervised release. *See* DE #10 (Recommended Disposition), *adopted in* DE #12. Her new term of supervision began on June 28, 2014.

1

Subsequently, the United States Probation Office (USPO) issued a Supervised Release Violation Report on December 5, 2014, and secured a warrant from the District Judge on December 9, 2014. DE #14 (Sealed Order). Defendant appeared before the undersigned for initial proceedings under Federal Rule of Criminal Procedure 32.1 on December 23, 2014. DE #17 (Minute Entry Order).[1]

At a final hearing, Defendant competently entered a knowing, voluntary, and intelligent stipulation to all of the charges (as described in the Report), after the Court afforded Combs all rights due under Rule 32.1 and 18 U.S.C. § 3583. The United States recommended at least a 6-month term of imprisonment and deferred to the USPO on options for future supervision or long-term treatment. Defense counsel recommended a 4-month term of incarceration and some form of long-term drug treatment. The Court heard the sworn testimony of USPO Martin and read and admitted into the record a letter from Combs.

The Report alleges violations of four conditions. First, the Report asserts that Combs tested positive for methamphetamine in two sweat patch tests and one urinalysis (as well as amphetamine in the first sweat patch) throughout November 2014. A laboratory confirmed each positive result. Second, the Report alleges possession of meth (through the avenue of meth use,

---

[1] At the initial appearance, the undersigned offered a Rule 32.1 preliminary hearing, which Defendant competently waived. *See* DE #17. The Court, upon referral from the District Judge, thus set and conducted a final hearing. Combs validly stipulated to the content of the Report, and the Court offered the parties the opportunity to present any proof and make any argument concerning the proper disposition of the matter. The Court also expressly informed Defendant of her right of allocution before the District Judge.

Additionally, at the initial appearance, the undersigned considered interim detention. The United States sought detention, and Combs did not object. The Court remanded Defendant for failing to meet her burden under Rule 32.1(a)(6). Combs did not establish, by clear and convincing evidence, that she would not flee or pose a danger if released during the interim

as evidenced by the positive tests) as a separate crime. Third, the Report contends Combs did not truthfully answer USPO inquiries and follow USPO instructions regarding contact with her boyfriend, Rickie Hatton, as recently as November 26, 2014. Fourth, the Report alleges Combs associated with a person engaged in criminal activity and a felon, namely, Mr. Hatton.

  At the final Rule 32.1 hearing, Combs conceded all of the violations. The conduct confessed would violate the Judgment's restrictions against controlled substance use and committing additional crime, as well as its requirements to truthfully answer all inquiries by the probation officer, to follow all instructions of the probation officer, and to refrain from associating with persons engaged in criminal activity and/or felons. DE #13 (Revocation Judgment). Defendant accepted responsibility at the final hearing and stipulated that, in the supervised-release context, each violation occurred as described. The stipulation and record, including the lab-verified test results appended to the Report, establish the violative conduct under Rule 32.1 and § 3583.

  The Court also heard sentencing argument from both sides. Combs did not allocute, but tendered a letter, which the Court read and admitted into the record. The Court has evaluated the full record, including the Report packet, the record from the prior revocation proceedings, and sentencing materials from the underlying Judgment in the prosecuting District. The Court has considered all of the § 3553 factors imported into the § 3583(e)(3) analysis.

  Under § 3583, a defendant's maximum penalty for a supervised release violation[2] hinges

---

period. *See id*.
[2] The proof standard is a preponderance of the evidence, *see* 18 U.S.C. § 3583(e)(3), which Defendant's stipulation and the proffered corroborating evidence (including the USPO Report and appended lab results) obviously satisfy.

3

on the gravity of the underlying offense of conviction. Combs's Title 21 conviction is for a Class C felony. 21 U.S.C. § 841(c)(2) (version in effect in May 2008); 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two (2) years of imprisonment. 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-439 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1(a)(2), the nature of Defendant's admitted conduct would qualify as a Grade B violation.[3] With a criminal history category of I (the category at the time of the conviction) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is 4-10 months.

    A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to any current or past violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). In this instance, the potential

---

[3] This is because the Sixth Circuit deems controlled substance use the equivalent of possession. *United States v. Metcalf*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008) (citing *United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995)). Meth possession under 21 U.S.C. § 844(a) would be a felony given Combs's prior § 841 conviction.

4

reimposed supervised release term is not more than 3 years, less any term of incarceration imposed (now or previously) upon revocation. *See* 18 U.S.C. § 3583(b) & (h).

The Court has carefully weighed the nature and circumstances of the offense[4] and Defendant's particular history and characteristics. Combs now fully admits to repeated improper use of controlled substances during her term of supervised release, as confirmed by three positive drug screens in November 2014 (and the Court remains mindful of the controlled substance use that led to her first revocation). Defendant also admits to continued association with Mr. Hatton and failing to follow the instructions of her probation officer. Despite oversight and prior revocation, Combs continues to surround herself with negative influences.

Officer Martin described Defendant's prior participation in drug treatment as sporadic, but noted that her recent record is ostensibly more positive. Combs has missed treatment sessions much less frequently (only twice since returning to supervision on June 28, 2014). USPO Martin also referenced Combs's outpatient drug treatment (as well as mental health treatment) history while noting that Combs has not yet sought inpatient treatment. (Combs claims to have made the request.) Officer Martin testified that she can tell a positive difference with Combs when she attends sessions regularly and takes medication. Ultimately, Officer Martin recommended imposing an additional term of supervision as beneficial to Defendant and noted that she sees hope for Combs in the future.

---

[4] The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). This observation does not detract from but rather shapes the Court's analysis of the statutory factor encompassing offense conduct.

However, Defendant's continued drug use, (at least prior) dismissive attitude toward Probation, and poor associational choices need attention, and her violative conduct warrants significant correction. The Court further notes that Combs received under-guideline sentences for both her original conviction and her first revocation. However, after being given this leniency and trust investment, she returned to unlawful—and more serious—conduct; meth represents more danger than marijuana. Defendant's return to meth also tracks the conduct of her original conviction and could potentially lead (given her prior drug trafficking conviction) to a lengthy prison term (with a mandatory minimum) in a future case. Overall, the behavior signifies a worsening problem.

Therefore, per the USPO Report and Defendant's own admissions, the Court finds that Combs has violated four separate conditions of supervised release. As described above, Combs shows a pattern of resisting the Court's instructions and engaging in prohibited, dangerous (felony drug use/possession), and deceitful behavior without deterrence from or responsiveness to USPO supervision.

The Court recommends, based on the violations found:

1. Revocation[5] and incarceration for a term of **7 months**, with Defendant to receive credit for all time in custody since execution of the warrant pertaining to this matter.

---

[5] Combs offered nothing that would justify any revocation exception under § 3583(d). The defense did not advocate for an exception from § 3583(g) mandatory detention. Combs only is transparent about the need for treatment under the glare of prosecution. This erodes the Court's belief in her motives. She has had significant treatment access, and despite that, her recent meth use is the most serious and threatening yet. Once Combs serves her revocation term, the USPO

2.  Following the incarceration period, Combs shall immediately commence a **1 year** term of supervised release. The release terms shall be those imposed by Judge Van Tatenhove in the prior Revocation Judgment.

After consideration of the entirety of Chapter 7, and applying the binding statutory factors in § 3553, the Court views the recommended sentence as sufficient but not greater than necessary to effectuate and comply with the statute's purposes. The Court carefully took the views of the United States and defense into account in reaching this result, and the revocation term reflects an effort to correct Defendant's violative (and felony-level) conduct and awaken her to the consequences of her actions, while putting her on the path toward further treatment and leading a lawful, fulfilling life. The sentence also reflects a just response to the significant breach of the Court's trust represented in Defendant's second revocation and more serious admitted conduct. Combs obviously has talent and useful vocational abilities, including experiences with electrical work and the horse industry, needed skills in the Central Kentucky area. She reached age 28 without a criminal record, only afterward drifting into more dangerous behavior, giving the Court optimism that she can return to and maintain a rule-following lifestyle. The Court reiterates the hope that all parties, as well as USPO Martin, expressed for Combs's future. The Court's recommendation, therefore, balances the proper need for corrective action with appropriate empowerment of Combs to get the treatment (regarding both drug addiction and mental health) she now desires. The Court intends Combs to use the year of supervision productively to ease her transition to a law-abiding life through continued post-release regulation

---

can then assess—based both on historical need, interim progress, and Combs's disposition—whether inpatient treatment would be appropriate.

and guidance.

The Court could have justified a much longer sentence here, based on prior leniency and the gravity of the instant misbehavior. The result recommended is stout enough, though, for a defendant with this record and this potential. The one year of post-revocation supervised release reflects the utility of that added period of supervision both as to community safety and Combs's own well-being and promise. She can use that year to assist her or can, again, squander the chance by further misconduct. If Combs finally puts aside her tendencies to misplace blame and to make bad associational choices, she can begin to lay the difficult but rewarding foundation for a free and lawful life.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, which the Court provided to defense counsel following the hearing. Absent waiver, the District Judge will set the matter for a hearing to include allocution.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Within 14 days of the date of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 31st day of December, 2014.

8

Signed By:

*Robert E. Wier*  *REW*

United States Magistrate Judge

9